Case number 172012. It is again an appeal from a decision of the Patent Trial and Appeal Board. Mr. Muneer, is that how I pronounce your name? It's Muneer, Your Honor. Okay. Do you want four minutes for rebuttal? That's correct. So may it please the Court, I'd like to start with what we've been calling the Nazawa IP RPRs. There's a controlling set of findings of fact by the Board here that compel both the method claims have been found patentable, but also the apparatus claims be found patentable. Now the controlling facts are not disputed and not appealed, and that's that the Nazawa prior art reference did not teach a switch having an oscillating signal configured to cause that switch to gate a signal and create another signal with a plurality of harmonics. The Board found that. As a matter of fact, that's not appealed right now. I'm sorry, found exactly what? It found that Nazawa does not teach, there's a claim, each of the claims, both apparatus and methods. Point me to the papers. Sure. If we go to A15 through 16 in one of the final written decisions, this is in the 1828. So regarding this plurality of harmonics in the switch that has to create it in the oscillating signal. What's the citation in there? Sorry, it's page 15 in the appendix, going on to 16, it's part of the final written decision. It reads, in response, Park Revision contends that Nazawa does not disclose expressly that its periodic signal contains a plurality of harmonics because there is no evidence that the many harmonics of Nazawa are the integer multiple harmonics required by the claims. On this point, we agree with Park Revision. Nazawa's disclosure that the output in principle contains many harmonics does not convince us that the output actually or necessarily contains the integer multiple harmonics. Right, but I mean, at least as I remember, and this is the reason I asked you, that the sentence that you uttered led me to interrupt the question, is the usual thing that we often deal with in statutes, of having a verb followed by several clauses with that phrase followed. The board clearly found that Nazawa taught a structure capable of doing it, and clearly found that Nazawa did not teach an actual doing of it, the doing of it being the production of the plurality of harmonics. And it was on that distinction that it said, apparatus claims, unpatentable, method claims, not proven unpatentable because the former doesn't require a teaching of actually producing the relevant harmonics, and the method claims do. I would agree with that summary, but I would add one more thing. And that's that the board not only found that Nazawa did not actually disclose configuring the disclosed apparatus, the mixer, so that it would create the plurality of harmonics, but that there was no evidence. That's where we start to get imprecise about. The board found that it did teach, that Nazawa did teach configuring a structure that, as a matter of fact, though not mentioned in Nazawa, would produce, with certain inputs, the relevant harmonics. But I think where hopefully we are agreeing is with the certain inputs. Yes. That it had to be, that the Nazawa mixer. That it's under certain conditions. Under certain conditions. So. Not mentioned or proposed in Nazawa. Right. The board found that Nazawa didn't provide a reason to do it. Cool. Within its four corners, which is why it found the method claims valid. That's correct. But how do you get around our many cases, including Bosh and Loam, that said the key with apparatus claims is not what an apparatus does, but what it is. What it's capable of doing. Because I think in finding that the mere capability of this Nazawa system of being configured to operate as the claim system. No. That's not quite right. Okay. It is capable, as configured, of doing this. See, I think that's where we're disagreeing, because part of the system is, for example. Putting an input into a fully configured system is not reconfiguring it.  But is your argument, then, that the board clearly erred in concluding that it was capable of doing it? Or is your argument that the board erred as a matter of law in saying that was enough? The latter, Your Honor. That it erred as a matter of law by deciding that that was enough. And one of the reasons of that was, if we look at claim 22, which is one of the apparatus claims, and compare that to the method claim that we're talking about, where the method claim 25 includes getting a reference signal at a rate that is a function of said string of pulses to create a periodic signal having a plurality of harmonics. If we compare that to the system claim, it's not claiming just a... If you look at claim 22, for example, it doesn't claim just a switch capable of receiving a certain kind of signal. It's a switch module having a first input connected to a bias signal and a control input connected to a control signal. The control signal is being claimed here. And it goes on further and says, wherein said control signal is an oscillating signal. Again, it's not a switch module that can just... Is capable of receiving such a switch. It's connected. I'm sorry. Capable of receiving such a signal. It's claimed as is connected to that control signal. And that control signal is claimed as is an oscillating signal. And said control signal causing said switch module to gate said bias signal. And then it goes on and says, wherein it results in the harmonically rich signal comprised of a plurality of harmonics. So it's not that what was claimed here is just a switch. What was claimed here is a switch with a particular type of oscillating signal. A particular type of oscillating signal that's going to push that gate... I'm sorry. Push that switch in a certain way. So that gates a signal and creates another with a plurality of harmonics. And it's that type of oscillating signal that is neither... And a switch that is operating under that type of oscillating signal. That system is what's not disclosed in the Zawa. The Zawa does disclose a switch that if somebody were properly motivated, could use an oscillating signal with it to achieve the invention here. We're not disputing that. But that's not a modification of the Zawa. That's really the question here. Is using an oscillating signal with it a modification of the Zawa? Or is it simply using the Zawa under certain conditions? Because the Zawa does not expressly teach an oscillating signal that is connected to this switch and causes this switch to gate in a way that creates a plurality of harmonics, that oscillating signal, that control signal that I just read that's part of this claim is not disclosed or suggested in the Zawa. And the board found that that was true. The board found that. So I would say that it is a modification in the Zawa because there's nothing in the Zawa about using that type of oscillating signal. To come up with that type of oscillating signal, you need to do something that's not described in the Zawa. And that was the board's error. The board found that the Zawa didn't teach that type of oscillating signal when Qualcomm attempted in its reply brief to argue, the question isn't whether the Zawa actually taught that. The question is whether it would have been obvious to use that sort of signal in the Zawa system. That came up for the first time in Qualcomm's reply brief. And the board correctly found, one, we're not going to consider that because it wasn't in the petition. But two, Qualcomm, you didn't support that anyways. There's no evidence here that of a person of ordinary skill would have been motivated. If I can read a quote so I'm not paraphrasing inaccurately. As discussed, these are, this is, I'm sorry, at page 18 of the appendix, the board found, as discussed above, these arguments, the obviousness arguments merely show that, I'm sorry, the arguments from the petition merely show that the Zawa could, if given the proper inputs, produce the required harmonics. The petition does not speak to whether a person of ordinary skill in the art would have any reason to do so. That's at A18 of the 1828 final written decision. So, again, the board found, as fact, there was no evidence of any motivation to use this different kind of oscillating signal. This oscillating signal that, in connection with the switch, would cause the plurality of harmonics that's being claimed here. And that oscillating signal is claimed here. What's the benefit of having a plurality of integer multiple harmonics in the signal? So, one of the benefits is, and I don't think this was discussed much on the record, so I don't think there's anything I can specifically point to. I'm just really trying to understand this technology. Well, good luck to you, Judge. Basically, it's a way of, I think we described a little bit in our briefs that my voice, my voice signal, it's hard to transmit that because it's a low frequency. So what happens is a low frequency signal gets imparted on a high frequency signal, and the resulting signal is what gets transmitted wirelessly. And that's the information signal or the base signal. That's correct. My voice would be the baseband signal, the information signal. The use of the pluralities, excuse me, the harmonics, is one way of getting a higher frequency signal in a more efficient manner. So instead of using the frequency that would be, you know, you can use a harmonic that would have a higher frequency as the transmission signal rather than a different signal. So it's an efficient way of getting a higher signal. The point we're arguing here is a production of this plurality of harmonic signals. That's correct. Okay, so you're trying, or your argument is based on the oscillating signal. All the oscillating signal is is the base signal or the information signal that goes through the oscillator, and the oscillator is simply opening and closing the gate. Well, I just want to make sure we're on the same page. When you were asking me about what the baseband signal is, is not necessarily the oscillating signal. Correct. Okay, so the oscillating signal is chosen, and I think it's, you know, undisputed that from Qualcomm's own reply brief, you know, a mixer may or may not result in the mixer, I'm sorry, this is an A5350, that depending on the design of the mixer and the frequency selected for the bias signal, that would be the baseband signal, and the oscillating control signal. That is what's going to factor into, you have to configure and choose that oscillating signal specially to create the plurality of harmonics. Does that answer your question? Well, but the Nozawa structure is capable of doing that. It was capable of doing it, but it didn't describe doing it. It didn't describe using and configuring such an oscillating signal to create those plurality of harmonics. The board found that, and the board found additionally there was no evidence that it was obvious to do so. Wait, all the experts agree that MOS, that using the MOS equation, that the harmonics, the many harmonics, would be produced under all conditions, right? No, that's not correct. But I thought it was just the integer harmonics that would not necessarily be produced. Then I misunderstood your question, yes. So if I can frame it this way, if you were disposed to wanting to know what oscillating signal you could use for a switch to create a plurality of harmonics, then you could use the MOS equation to figure out, all right, here's what my oscillating signal should be at, right? It's a formula. But the problem is there's no motivation here to do so. So there's math available for figuring out what that oscillating signal should be if you want to use the switch to create this plurality of harmonics as claimed here. But the point is, and the board found, there was no motivation to do so. Right. That's why they found that the method claims were patented. That's right. Qualcomm itself admitted in its appeal briefs the limitations of the apparatus claims are the same as in the method claims for this particular issue. And as I read, the apparatus claims are not just a switch capable of receiving a signal. The control signal is actively claimed. It's part of the apparatus. It's part of the system being claimed here. OK. You're way into your rebuttal. I'll give you three minutes for rebuttal. Thank you, Your Honors. May it please the court. So counsel was discussing the Nozawa IPRs, which is what I want to discuss as well. And in the Nozawa IPRs, the board's factual finding was a little bit different than what counsel presented here. In particular, in the board's factual finding at appendix at page 17, the board found that, and I quote, one point appears beyond dispute. Under some conditions, but not all conditions, the Moss equation shows that Nozawa's structure will provide a periodic signal that contains integer multiples of the fundamental frequency. So what the board found is that it was beyond dispute that Nozawa will, in fact, generate integer multiple harmonics. And the important factual consideration, it wasn't mentioned here, but is in the record, is that Parker Vision itself submitted evidence that Nozawa will generate these integer multiple harmonics. So Parker Vision. But you agree, though, that the board expressly found that Nozawa does not itself use an oscillating signal, right? Sorry. So I agree that what the board found is that Nozawa will not always generate integer multiple harmonics. And I agree with that point. Also that Nozawa's words do not say in some way, you can't use this to generate these harmonics. So Nozawa does not actually make an explicit statement that the many harmonics that it teaches are integer multiple harmonics. Right, and the board expressly found that it doesn't say. So your answer to Judge Toronto is yes. Yes, that's correct. Okay. But I think that from there, the board then said, but we'll look at the full factual record. And the full factual record here is that Parker Vision put into evidence and made its own admission, and I can point to their own brief. When they discussed the frequency content, and I'm referring to the appendix at page 280, they said, thus the frequency content of the combined signal of the 4052 chip, the purported periodic signal, will be, and they went on to list a set of calculations. Now where Parker Vision erred is they cut those calculations short. So they acknowledged that the frequency time… Are you just explaining why this point is not in dispute? Because they still don't dispute this point that's not in dispute. So why are we spending time on this? Well, I think the importance about this point is that we have, one, that Nozawa teaches this many harmonics. And then Parker Vision raised an argument and they said, well, wait a second, board. This many harmonics might not be the integer multiple harmonics. And on that point, everybody agrees. It might not be. But then Parker Vision went further. Parker Vision said, we're going to actually give you, board, evidence. We're going to give you the frequency content of… I'm not being clear. I think your friend on the other side acknowledges expressly that Nozawa can, in fact, be used to produce these harmonics. At that point, why don't we take that as a given and figure out what the consequences of that. I think what you're saying is, and what's more, they put in evidence to support their own acknowledgment. I'm happy with the acknowledgment. Right. I specifically asked him if he was saying the board clearly erred in making the finding of capable of, and he said no. He said it erred as a matter of law with respect to the conclusion that all you have to do is have it be capable of when, A, it's not disclosed, and this is my next question, what is your response to his argument that says you have to look at our claims, and our claims actually claim as part of the apparatus, the conditions that would then have to be imposed on Nozawa for it to actually produce those integers, those harmonics? Yeah, so I think that this point, this idea, what I view as their sort of mixed method and system claim concept, that they're saying that there's this method requirement in their system claims. On this point, if we accept that to be true, then this court's decision in both Unwired Planet and the Hewlett-Packard v. Mustek decision are controlling. And if we look at the Hewlett-Packard v. Mustek decision, which I think is the closest decision here, at 1326 of that decision, this court found a prior art product that sometimes, but not always, embodies a claimed method, nonetheless teaches that aspect of the invention. And here, that's the exact factual finding that the board made. The board made, I mean, the parallel between what was decided in Mustek at 1326 and what the board found as a factual matter at appendix at page 17 are striking. Again, Mustek says sometimes, but not always, nonetheless embodies the claimed method. And then if we look at the factual finding that the board made, the board made a decision that under some conditions, but not all conditions, Nozawa's structure will provide the integer multiple harmonics. So when we look at the Mustek decision, regardless of whether we view this as a method claim, which is what Qualcomm's appeal is, or we view this as a system, sort of mixed system and method claim, which is what Parker Vision's appeal is, the Mustek decision is controlling here. Similarly, in the unwired planet decision, the court came to the same conclusion. The court came to the conclusion, looking at whether a method step was performed, and it said that even if it does not always result, it's still sufficient that it sometimes results in order to teach a method claim. What about the fact that you actually have to change the conditions? I mean, clearly what we've said is that those cases contemplate no modification to the prior art. And why is changing the conditions not a modification to the prior art? So again, there's no modification to the actual structure of Nozawa in any way, shape, or form that the board bases its findings of fact on. The board didn't require any sort of change in configuration. It didn't require any modification to what Nozawa teaches. The board just found, based off of the undisputed facts, which Parker, again, is that it will generate integer multiple harmonics within its operating range. And so any mixer or any transmitter has a range of frequencies that it can operate under. And here, Parker Vision gave an example of one of those frequencies. They selected a frequency within Nozawa's operating range, and that showed that there are integer multiple harmonics. They didn't need any modification to Nozawa to select those frequencies. They just selected frequencies within its operating range, and that proved that there's no change in configuration. It's just how the device is structured to operate. It's not about whether it's capable of being configured. It is, in fact, configured in order to generate integer multiple harmonics. I think that Parker Vision also raised this point about waiver. And I think that's something that is important to address. So on this waiver issue, the evidence that Qualcomm relied on and the board considered was evidence that Parker Vision itself put into the record. So when we reach those factual findings, then the only thing we need to do here is apply the law. And the controlling law, which I haven't heard any discussion that counters the controlling law in this court's decision in HP versus Mustech, as well as on Wired Planet. So what is your argument on your cross-appeal for the method claims given what we've just been discussing for a half hour? Well, I think that the method claims, it's the same issue. We have the same factual findings. We have findings that this device will, in fact, generate. And then, again, if we apply that Mustech decision... If the right inputs are used and the board found there is no evidence that you've produced that would motivate a relevant skilled artisan to put in those inputs. So I want to answer that in two parts. Is that an accurate summary of what the board found? Yeah, so I do think that's an accurate summary. But I think that there the board is making a legal error. So the board is actually requiring for this method claim that we show that somebody would, in fact, perform the method steps. And this court has consistently found, including in the Mustech decision, that you don't actually need to provide evidence that somebody would perform the method. It's enough, if we look at Mustech decision, the fact that the prior art product would in some cases, even if not always, would in some cases perform the claim method, that that evidence in and of itself is sufficient. Well, assuming the prior art either teaches it or provides a motivation to do it. And in this case, the board specifically found that it did neither. So the board's finding as to whether or not it would be obvious to select... This goes to the second point that I wanted to respond to Judge Toronto, which is the board didn't consider in that analysis, they didn't consider the fact that Parker Vision itself put into the record the frequencies that you would select. So Parker Vision chose frequencies. And the obviousness analysis, to say that we can't rely on Parker Vision's admission about selecting frequencies that then would generate integer multiple harmonics. So it was an admission that a skilled artisan would select those particular frequencies or this was simply testimony illustrating the calculation. Let's suppose you use 0.9 or whatever. There's a 0.9 somewhere here, right? And these are the harmonics you would get. And look, number 35 and number 39 turn out to be integer multiples. Yeah. So I think that you're correct. That the testimony was giving the expert examples with which to work from. But I think that to say that those frequencies, to suggest that those frequencies are, you know, not an obvious set of frequencies to select when you've already given them to the expert to make the calculation that this is a reasonable thing, that we're going to present these frequencies to the board. You know, I don't know that Parker Vision would stand up and say, we selected frequencies that we think are unreasonable to select for an expert to select. If that's true, then I'd be surprised. But I think that you select frequencies that a person of ordinary skill in the art would reasonably select. And those frequencies show that there are, in fact, integer multiple harmonics. Were those frequencies specific to the 4052 chip? Yeah. Is that what they were arguing here? So the 4052 chip is actually, within the Nozawa device, the specific structure that actually does the frequency up conversion is the 4052 chip. So it's identifying the specific component within the overall Nozawa structure that will actually take those two frequencies and then output that higher frequency output signal. So the 4052 chip, when it refers to the 4052 chip, it's referring to the exact component that performs the up conversion. So the CETA would look at the 4052 chip and say, these are the frequency contents that I needed in order to create a periodic signal. So it would be, yes, these are frequencies that could be used in order to create an output signal, correct. So what's your response on waiver? I know you started down that road and we got you off of it. Yeah, so on the waiver issue, the evidence that Qualcomm is relying on is, again, is evidence that PARC Revision itself put into the record to make its argument. And we're entitled to do that, both in this court's decision in Itametsu, as well as Genzyme. The court found that a petitioner is entitled to rely on evidence that the patent owner puts into the record. And I don't think that that issue is even at dispute. So the waiver argument, given that we are clearly relying on the admissions that they put into the record... But you didn't make that argument until your reply. We did not... I mean, isn't that what the board said? So the board didn't consider their admissions for the point of what frequencies a person would select. They didn't do anything else. And you didn't ask them to do that until your reply. Well, we wouldn't have had that evidence. That's correct. But we wouldn't have had that evidence until our reply. That would have been our first opportunity to address it because it's the evidence that the patent owner put in. But it wouldn't have been your first opportunity to make the assertion that a skilled artisan would select these things. It certainly would be your first opportunity to address their evidence. But you could have presented your own evidence. Well, that is correct. I mean, I think that in our original petition, we did actually make the argument that a person would consider it obvious. So if I refer to you to page 132, which is the original petition, appendix page 132, it says, a person of ordinary skill in the art would consider it obvious to operate an Asawa's mixer at frequencies that would generate harmonics of the fundamental frequency of the periodic signal. Right, but you've got an obviousness case. You put in no evidence of a motivation to combine. And now what you're saying,  What we're saying is that the formulas would naturally take one of skill in the art there. And that's a totally different argument than an obviousness case that needs a motivation to combine analysis. I don't want to go over my time. Can I respond to the question? You can respond to that. Yeah, so I think that it's the same argument that was originally presented. It's just relying on the additional evidence that Park Revision put into the record. OK, thank you. Thank you. Can you start with that point on the cross appeal? The waiver issue, Your Honor? Pardon? The waiver issue? No, on the issue of whether or not the very evidence that you put in would show that one of skill in the art, just by using simple equations and formulas, would be able to use Nazawa in that way. Well, I'll say that the argument that that somehow supported their obviousness conclusion is an invention of the appeal. It's not in the reply brief. It's not in the board's decision. And it's certainly nothing that we ever, ever represented or said, despite their representations that we did, said that these are obvious inputs to use. Our point was only, in their petition, they had said these are harmonics, and had gone on and said, if you use the Nazawa system, every calculation from the MOS signal will show that it's a harmonic. Our point was, no, what you picked, you, Qualcomm, picked certain inputs that those first three calculations were N equals 1, 3 and 5. Just to be clear, if you look at page A132, which is what Mr. Gardner cited, that does seem to have a sentence at the bottom of the page. Accordingly, OPOSA would consider it obvious to operate Nazawa's mixer at frequencies that would generate harmonics of the fundamental frequency of the periodic signal. But that's only as to what claims 289 and 369? What's your response? Not only that, Your Honor. I think there's two waiver issues that I don't want to get mixed up. But for on this issue, which the board already found they had waived this issue, this is a ground that relies on Nazawa, Phillips, and MOS. This was a ground that was not instituted, that was rejected because it was meant to consider a claim construction of harmonics that the board did not adopt. So this ground wasn't part. My understanding is it wasn't instituted anyways. But there's two waiver issues here. There's their waiver of the obviousness argument, which the board agreed with already and found that not only did they not raise it in the petition, but as we've discussed, they didn't support it. But there's also not a waiver issue, but it's too late issue, this capable argument. The argument that as long as Nazawa is capable of doing it, we're going to construe these claims so that the oscillating signal is not part of it, so that the wear-in is part of it. We, the board, are going to construe that. That came up in the final written decision. That claim construction was never argued in the petition. That claim construction was never put into the institution decision so that we could respond to it. That came up after all of the briefing and after all of the arguments. Let me ask you, how do you distinguish must have? To be clear, I think pretty easy because in that particular case, it wasn't just, well, maybe accidentally something will happen. Think of it this way. It was a machine with two settings. You could set it this way, and it was expressly disclosed to set it that way, or you could set it a different way. The point that I think the patent owner tried to make... Also expressly disclosed. Yeah. I mentioned there's two settings, and if you change the setting, then it's not going to do what's being claimed. So it's a completely different situation. It's the normal, I've claimed a magnifying glass. Well, my jackknife has a magnifying glass and a blade. The blade doesn't infringe, so it's not there. It's a different situation. Excuse me? But both were taught. Both were taught. And it was a method claim, to be honest with you, as well. So I don't know why it's relevant to reading out so-called functional language from an apparatus claim in the first place. Okay. Thank you. Thank you.  Yes, you're done. All right. Sorry, I was having fun. Thank you. That's okay.  Okay. All right. Good day, counsel.